Good morning. Good morning. May it please the Court. I'm Corrie Hong, representing Petitioner Marco Galdino. I'm here because the BIA made three critical errors in denying Mr. Galdino cat and withholding. On the finding of past persecution, the BIA described the extent of harm as being that he was struck, he was locked in the room, he was struck by the police, and he was recently threatened by his in-laws. The record, in stark contrast, paints a very different situation that occurred to him. Ms. Hong, I understand why you want to start with this argument. I think it's a very sympathetic record, but the issue that's really bothering me about this case is the seven-year delay in the filing and whether or not we even have jurisdiction to review the BIA's determination that he didn't show extraordinary circumstances. So if you could address that at some point during your presentation. Sure. Well, I'll just underscore that regardless of how this file claim is resolved, he's entitled to cat and withholding. But with cat and with withholding, what's the standard to review? Substantial evidence. Well, substantial evidence. So if there's substantial evidence that sustains the BIA's decision, then I have to go with what the BIA suggests, even if I disagree. Right. But in this instance, there isn't substantial evidence. Under Cartilla, his testimony has to be deemed ñ was deemed credible and therefore must be considered true by this Court. And what happened is that the BIA grossly mischaracterized, omitted, and had a very selective rendition of the persecution. Did he ever seek medical attention after any of these episodes? In Brazil? Never. Yeah. I found nothing in the record that suggested that after any of the episodes, he ever sought medical attention. No, but that's not a requirement under Ninth Circuit law. Well, it certainly suggests that maybe the persecution or the episodes you're identifying don't rise to the level of persecution. Abuse is not by itself persecution. Under Boris Adano, though, we failed to see how holding a loaded gun to petitioner's head and threatening to pull the trigger was anything but a death threat. For Mr. Galdino, he had the loaded gun in his mouth. By who? By his father, who told him, be straight, marry this woman, or I will kill you. So explain to me why he sent back to Brazil, which is one of the largest countries in the world, that it's more likely than not that unless he wants to be found by his father, he will be found by his father and will be subject to that threat again. Under the U.S. State Department reports, 56% of gay men were killed by family members. Mr. Galdino's... You haven't answered my question. Brazil is a big country. Is he going to go back and move into his father's house? Or can he live someplace else? No, but he was threatened when he was living somewhere else. And when there's a finding of past persecution, which Boris Adano provides, that there's a presumption of a well-founded fear that the government has to rebut, the only evidence that the government produced to rebut that standard was one Internet article saying that there was a gay parade in Sao Paulo. Now, that cannot overcome 26 country condition reports that were submitted on his behalf that describe Brazil as the world's leader in killing gay men. There's such a heightened degree of persecution against men that that meets the 10% threshold for withholding or meets the more likely not standard. Well, see, you only get to the 10% if you answer Judge Tallman's concerns. Right now you're trying something else, and that requires more likely than not. That's an awfully high standard to meet. But to describe as a country which is described as the world killer in killing of homosexuals meets the more likely not standard for withholding. Well, if it does, that means every gay person in Brazil is entitled to asylum under the CAT standard. And I think that's an unlikely conclusion. You know, there has to be shown that it's individualized and persecuted. And in this case, his father has directed, has threatened him. His father-in-law, when he finally renounced his heterosexuality, called him in the United States and threatened to kill him if he were ever to return. Those two death threats constitute past persecution, and therefore he gets a presumption of well-founded fear. Well, just a minute. We're not exactly there with just that. You've got three things to show. First, that they rise to the level of persecution, which is all you've argued. Then that they were on account of a protected ground, which you have to argue, and I'll assume that you have. The last is they were inflicted by the government or an individual that the government cannot or is unwilling to control. Now that has not been shown. Nobody even said anything about going to the government about his dad's idea or about his father-in-law's idea or that they were not able to control what they did. Mere discrimination is not persecution. That's in our case law. Mere threats are not persecution. So, again, I'm back at substantial evidence here. And I'm trying to find it. I can't find it. So then we go to what are you going to show about future persecution? Then you have my colleague's questions. You've got to answer those questions in order to get there under either cat or withholding. Otherwise, you've got to get to Judge Tallman's questions, which I think are your topper case. And I would refer to the State Department report from 2005 that described societal violence against homosexuals, that there were 180 killings of homosexuals during that year, that sexual orientation is That doesn't make it more likely than not. Brazil is a country of, like, 200 and some million people. Well, there's also evidence showing that the government has only prosecuted 8 percent of murders committed against gay men, that confessed killers are allowed out. And there was an article saying that, in contrast to the United States, the defense that was used to kill Matthew Shepard I think you really need to get to the asylum issue. More likely than not, it's awfully hard to reach. And since your time is dwindling, I think you better get to Judge Tallman's question because that's the route that offers a little more promise. Turning to the asylum question, Ramadan provides and holds that this court has jurisdiction over whether the termination of whether the immigration judge correctly considered evidence. Why does Ramadan hold that? Why does it hold that? Yeah. Well, in that case involves a changed country or a claim that a woman who had been here in the United States had gone for changed circumstances. The immigration judge in that case determined that that evidence was not sufficient to show the requirement under one-year bar. The Ninth Circuit said we have review because it's a question of facts to undisputed facts. Well, my worry is what you write on. I read Ramadan. It seems to me that as an old district judge, when the facts were undisputed and all I had to do was apply the law, then it became a question of law. That's all Ramadan says. These facts are not undisputed. We've got all kinds of disputed facts between your client and the government. So how is this a question of law? If I go with Ramadan, and I appreciate that there are some who have read through there and say, okay, Ali's, but the old district court, if he doesn't have any dispute of facts, and all he has to do is apply the law, it becomes a question of law. And that's all Ramadan says. Here we have all kinds of disputed facts. So how can this be a question of law over which I have jurisdiction? I would have two answers. One, that there aren't disputed facts because under Qartiya, by the immigration judge making a credibility finding, all of his testimony is deemed to be true by this court. Okay, well, let's stop right there. Okay, here's a problem I have with what you've just characterized as an undisputed fact. He claims he arrived in 1997, but that his bipolar disorder didn't surface until four years later. That's three years beyond the one-year statute that he must file his asylum claim on. If that's the state of the record, he hasn't shown any evidence to give rise to a claim of extraordinary circumstances to justify the delay of seven years in filing the asylum application. I would submit that that's a government classification. The record, though, is at 127. Government classification or the government version of the facts. The government's version of the facts. And your version is different. Well, my version is what the record says. Is your version different from the government's version? Yes. Then we have disputed issues of fact, do we not? No, because the facts that were submitted. Well, wait a second. How can we have two different versions of the facts and not have a dispute over facts? If the government distorts the facts, that's not a dispute over the facts. What happened here is we should take your version of the facts because your version is true and theirs is not. Right. That's what the Ninth Circuit requires. Counsel, isn't that what a factual dispute is all about? Well, also, just to take a step backward, I think this would be akin to Marvia and Mejia, whereby the BIA is required to consider all arguments and all evidence. The immigration judge simply said, I cannot make this finding because ignorance of the law is not enough. Mr. Goldino, however, presented it. Your client did testify that one of the reasons why he didn't file for seven years was that he didn't know. Right. However. So isn't that what the IJ was talking about when he referred to ignorance of the law? And that's the error because Cotova requires that the immigration judge has to consider the written findings and the written evidence that a pro se litigant produced in the evidence. Under that situation, his brief identified not only ignorance of the law but his medical conditions, his forced marriage, and all the psychological fallout that that included. The immigration judge had to weigh it. But the psychological fallout doesn't begin, as I understand it, until four years later. That is not what the that's not how Mr. Goldino describes it. He describes having committed trying to commit suicide while he was in Brazil even before he arrived here. Under the proper consideration, the error was simply that the immigration judge did not consider the entirety of his claim. Under Mejia and Maravilla, it's best to remand this issue to the BIA and to the immigration judge to make sure that they consider the facts because right now the record shows that they did not. Counsel, I see you're out of time. Let me hear from counsel for the government. May it please the court. My name is Lindsay Glarner, and I represent the government. This case presents two distinct issues. The first involves this court's jurisdiction over Petitioner's asylum application, and the second involves the merits of Petitioner's application for withholding of removal. Contrary to Petitioner's arguments, this court lacks jurisdiction to review the denial of Petitioner's asylum application, and the agency reasonably concluded that Petitioner failed to demonstrate his eligibility for withholding of removal. With respect to the first issue, this court lacks jurisdiction to consider whether Petitioner timely filed his asylum application or whether he established extraordinary circumstances to excuse his untimely filing because, one, Petitioner has failed to present a properly exhausted constitutional claim or question of law, and, two, Petitioner's extraordinary circumstances claim does not present a pure question of law or involve the application of law to undisputed facts. Beginning with Petitioner's claim that the immigration judge erred by failing to consider documents discussing his mental disability, this claim presents a procedural due process claim, which this court has found must be exhausted before the board. Have a Petitioner failed to do just that? Neither in his notice of appeal nor in his brief in support of his appeal to the board does he even vaguely reference any procedural errors with respect to the immigration judge's handling or consideration of the evidence. Rather, he merely generally challenges the immigration judge's denial of his asylum application. Even construing these documents broadly, they can't be construed to meet the exhaustion requirement, and as a result, Petitioner has failed to exhaust his claim before this court. Let me ask something about that. I mean, I've encountered this problem before, and it seems to me if you're arguing the underlying facts, because the BIA has the right to pass upon the underlying facts, it doesn't have the same relationship to the immigration judge that we have at the district court, for example. Is there really a separate argument to be made to the BIA, here are the facts, here's the evidence, this is what you should find, do you really need to argue separately? The IJ erred procedurally because he didn't consider this evidence that I'm putting in front of you directly. I mean, I'm not really sure that there's a separate exhaustion requirement separate and apart from putting the evidence in front of the BIA and arguing that the board ought to respond to that evidence. Right. I guess that because the challenges that were made in the notice of appeal and the brief were so broad that even if the board was to review those challenges, that it might not necessarily, it wasn't, in other words, I guess it wasn't a challenge, the challenges that were made were not a challenge to the manner in which the immigration judge made the final conclusion, but it rather just challenged the ultimate conclusion. Well, let's take it to this level. Because the board can pass and does pass, in this case and other cases put together, look real quickly at the kind of disposition. Yeah, the board rendered its own opinion here. They didn't adopt the IJ's simply say we adopt without opinion or we adopt and affirm citing to Bravano. They rendered their own few paragraphs here. Can't the petitioner make the same kind of procedural complaint directly as to what the board did, which is that the board did not properly consider all the evidence because it failed to take into account X, Y, and Z, the same argument that's been used successfully with our court in the past in some context to say that, well, even though it's factually based, there's a due process claim there someplace because it has to do with the adjudication not properly considering all the evidence. And not even worry about what the IJ did, just speak directly to what the board did. That's been exhausted in some level because the board had the evidence in front of it. Right. And I think even when the board reviewed the record, I think that there was no evidence in the record to support the contention in the brief that the mental disability prevented it from timely filing. So I think as the board was reviewing the record, it saw the contention. Well, it did have his affidavit and his statements that have been attributed to him. I've found them in the record. Presumably the board had that in the record in front of it as well. But his declaration nor his testimony ever claimed that his mental disability was what prevented him from timely filing his asylum application. On two occasions in his application for asylum and as well as during his testimony, he was specifically asked why he failed to timely file his asylum application, and on both instances he didn't claim it was because of his mental disability but instead claimed that it was just because he didn't know that as a homosexual he could apply for asylum. So the record just didn't support the contention. With respect to the second issue, with respect to Respondent Extraordinary Circumstances' claim, this claim does not present a pure question of law or involve the application of law to undisputed facts. Rather, this is an inherently discretionary determination. There is no statutory definition or standard for determining whether a certain circumstance is in fact extraordinary. There is no definition, and as a result, the immigration judges are required to conduct a subjective evaluation of the facts in each individual case to determine whether the circumstance presented or the facts in that case are extraordinary enough to constitute an extraordinary circumstance. And because of the subjective nature of this analysis, the extraordinary circumstance exception is distinguishable from the changed circumstances exception. And as a result, the determination of whether an extraordinary circumstance or a certain circumstance is extraordinary enough is a purely discretionary determination. Can you help me with that because I've really been struggling trying to square the language in our opinions that try to explain why we still have jurisdiction when I'm trying to formulate the question right. Our cases seem to suggest that even though the statute speaks in terms of a discretionary determination by the Attorney General, it nonetheless involves the application of law to undisputed facts and that that somehow gives rise to our jurisdiction to second-guess the Attorney General's determination even in the face of the statute that seems to suggest that we don't have jurisdiction to do that. Right. I would say that in that case, the facts presented involve the changed circumstances exception. And I think that in evaluating whether a changed circumstance exists, you're really just applying, comparing two different sets of facts to determine whether they're similar or different. But in the extraordinary circumstance exception, because there's no definition for what is extraordinary, that the immigration judges are required to conduct an individual analysis of whether the facts in the case are extraordinary. So it's not – I guess what I'm saying is it requires more of a subjective analysis than the changed circumstances exception does because it's not simply just comparing whether two sets of facts are similar or different. Okay. I'm really having a hard time, and it's not so much with your answer as it is with trying to reconcile our case law in this area. I'm not sure there is a substantive difference between applying the law of changed circumstances to a set of facts where the alien is saying as a result of these facts, country conditions have changed, and therefore that excuses my failure to file my asylum application earlier, whereas here we're trying to determine whether or not there were extraordinary circumstances that are, as you say, maybe subjective to the petitioner that justify the failure to file the asylum. I'm not sure what's all that different in the analysis. Well, I think that in Ramadan, for example, the court indicated that the changed circumstances analysis, although it required a judgment call about whether there are changed circumstances, it didn't involve – it didn't require a subjective analysis because it was just simple. It's either black or white, either there are changed circumstances or there are not changed circumstances. Versus an extraordinary circumstances case, I think that there's an area of gray where reasonable minds could very well differ as to whether a certain circumstance is, in fact, extraordinary. And I think it's that subjective component of the extraordinary circumstances exception that's very different from the changed circumstances exception. Are there ever questions of fact in a changed circumstances decision? In terms of whether there can – yes, I would say yes. So in Ramadan, the court found there was no question of fact, that they were undisputed facts and then applied the law. Correct. And then there could, in another case similar to Ramadan, a similar issue of changed circumstances where they have a fight or they have a dispute about whether they really have changed circumstances or not, then we would not have a question of law. Correct. And in this case, there are disputed facts. As you recognized earlier, there is a dispute as to when Petitioner's mental disability presented itself in the United States. I know that Petitioner indicated that he experienced bouts of depression in Brazil. However, in his declaration, he indicated that he didn't feel out of control and extremely depressed in the United States until 2004. So that doesn't explain, between 1998 and 2003, he had a job, he had a four-year relationship, he seemed to be living a healthy life. That doesn't explain why he failed to file within that period of time. I guess if there are no questions regarding the claim with respect to the holding of removal, I'll briefly conclude. I'm already in the rabbit. I think you're out of time anyway, so it's time to conclude. All right. Ms. Hong, I'll give you a minute on rebuttal. Thank you. Just three quick points. Although he did not testify about the changed circumstances, it is very much in his written documentation to the IJ and to the board that his mental condition contributed to his inability to file an asylum claim. This is found in his brief beginning at 127. He also included documentation by the Florence Correction Center, which is run by ICE with medical officers there who diagnosed him as suffering from bipolar disorder and depression and gave him no less than five medications that he must take on a daily basis. What was the date of the medical report? The medical report is 154, October 2005 is when those went of that report. On the second issue, I would contend. But that doesn't address my concern about the four-year gap from 98 to 2002 or 2003. Or is your argument, well, if he was suffering this badly in 05, it must have manifested itself much earlier? I would contend that the IJ has to address it, which he never did. The IJ or the BIA have to contend what's wrong with the record. And perhaps they would come to that conclusion. Perhaps they would not. The problem in this case is that there is a complete omission because what happened is that the BIA completely ignored this part of the record. And under Rodriguez-Lameras, the BIA cannot summarily dismiss a claim without even purporting to engage in a substantive analysis. Don't you need expert testimony to do that? I mean, we run into this problem in death penalty cases a lot, where on subsequent habeas review there's a claim made that the penalty phase was defective because all this evidence of what happened to the defendant as a young person or through his earlier life, which a psychiatrist or a neuropsychologist or whatever the expert would be could testify might have led to some brain damage or that would explain his behavior. That's pretty sophisticated stuff, and there's nothing like that in the administrative record, is there? Right. Or there isn't a requirement under administrative law for a pro se alien who's detained to provide and produce that record. The immigration judge could have required it. They might have denied the case on that basis. But the fact is that they didn't because the reasonable inference is that the IJ simply ignored entirely. But the problem is that in the cases I'm thinking of, from a scientific standpoint, it's a very, very difficult question even for neuropsychiatrists or neurologists to opine as to when a particular form of mental illness may have manifested itself. And isn't the burden on the petitioner if he's claiming extraordinary circumstances to justify failing to timely file the asylum application, he's got to come forward with that proof at the time of the hearing before the IJ. And he produced that in his brief beginning at 127. He has a recitation of the facts showing that he tried to commit suicide in Brazil. And he was so afraid, even in the United States, that he did not reveal his sexual orientation to his parole officer. It wasn't until 2005 when he was in immigration proceedings did he have enough courage to realize that he had to reveal to a government authority that he was even gay. He was so afraid of what had occurred to him, he did not want to come out to anyone. That is something that the immigration judge had to consider. Maybe he would have accepted it, maybe not, but he has to consider it. And that's the error that's at issue. Okay. Thank you, counsel. Thank you. I appreciate your argument. The case just argued is submitted.
judges: Tallman, Clifton, Smith